WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CHRISTIE ELIZABETH QUICK,  )
                )
         Plaintiff, )
                )
 vs.             )
                )
ANDREW M. SAUL, Commissioner of )
Social Security,         )
                ) No. 3:20-cv-0197-HRH
         Defendant. )
_____)

O R D E R

  This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Plaintiff Christie Elizabeth Quick has moved for miscellaneous relief[1] and timely filed an opening brief,[2] to which defendant, Andrew M. Saul, has timely responded.[3] Oral argument was not requested and is not deemed necessary.

Procedural Background

  On April 4, 2019, plaintiff filed an application for disability benefits under Title II, alleging that she became disabled on May 10, 2017. Plaintiff alleges that she is disabled due

---

[1]Docket No. 18.

[2]Docket No. 19.

[3]Docket No. 21.

-1-

to depression and Lewy body dementia.[4] Plaintiff's application was denied initially, and she requested a hearing. After an administrative hearing on November 19, 2019, an administrative law judge (ALJ) denied plaintiff's application. On June 19, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 24, 2020, decision the final decision of the Commissioner. On August 12, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

General Background

Plaintiff was born on December 22, 1969. She was 47 years old on the alleged onset date of disability and 48 years old on her date last insured. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a cashier, store stocker, and housekeeper.

---

[4]Lewy body dementia

> is the second most common type of progressive dementia after Alzheimer's disease dementia. Protein deposits, called Lewy bodies, develop in nerve cells in the brain regions involved in thinking, memory and movement (motor control).
>
> Lewy body dementia causes a progressive decline in mental abilities. People with Lewy body dementia may experience visual hallucinations and changes in alertness and attention. Other effects include Parkinson's disease-like signs and symptoms such as rigid muscles, slow movement and tremors.

Mayo Clinic "Lewy Body Dementia", available at https://www.mayoclinic.org/diseases-conditions/lewy-body-dementia/symptoms-causes/syc-20352025 (last visited February 19, 2021).

## The ALJ's Decision

The ALJ first determined that plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2018."[5]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[6]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 10, 2017 through her date of last

---

[5]Admin. Rec. at 22.

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

insured of March 31, 2018. . . ."[7]

At step two, the ALJ found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. . . ."[8] The ALJ explained that plaintiff "alleged disability due to depression and Lewy Body Dementia" but that "the evidence is clear that neither condition was a medically determinable impairment prior to the expiration of the claimant's date last insured."[9] The ALJ relied on the testimony of the medical experts, Dr. Valette and Dr. Gaeta.[10]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 10, 2017, the alleged onset date, through March 31, 2018, the date last insured. . . ."[11]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal

---

[7]Admin. Rec. at 22.

[8]Admin. Rec. at 22.

[9]Admin. Rec. at 23.

[10]Admin. Rec. at 23.

[11]Admin. Rec. at 23.

standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

The ALJ decided this case at step two, finding that plaintiff had no medically determinable impairments prior to her date last insured.[12] "Step two . . . is a de minimis screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal citations omitted). "Thus, applying [the] normal standard of review to the requirements of step two, [the court] must determine whether the ALJ had substantial

---

[12]Admin. Rec. at 22.

evidence to find that the medical evidence clearly established that [plaintiff] did not have a medically severe impairment or combination of impairments" prior to her date last insured. Id.

There was not substantial evidence to support the ALJ's finding that plaintiff did not have Lewy body dementia prior to her date last insured. While there is no doubt that plaintiff was not formally diagnosed with Lewy body dementia until after her date last insured, Lewy body dementia is a progressive disease. Dr. Hrin, who did an extensive neuropsychological examination of plaintiff,[13] noted that plaintiff's symptoms related to her Lewy body dementia had been ongoing "for at least two years. . . ."[14] And, in another part of his report, Dr. Hrin stated that plaintiff's "[s]ymptomology presented itself 3 to 4 years ago."[15] This would mean that plaintiff had Lewy body dementia long before her date last insured and before the date on which she was formally diagnosed. "[A] claimant may offer retrospective diagnoses that relate back to the insured period to show disability." Petty v. Astrue, 550 F. Supp. 2d 1089, 1097 (D. Ariz. 2008).

The ALJ relied on the testimony of the two medical experts, Dr. Valette and Dr. Gaeta, to support her finding that plaintiff had no medically determinable impairments prior to her date last insured. But, both experts largely disavowed any familiarity with Lewy body

---

[13]Admin. Rec. at 773-783.

[14]Admin. Rec. at 773.

[15]Admin. Rec. at 775.

-6-

dementia. Dr. Valette, a clinical psychologist,[16] testified that Lewy Body dementia was "not my area of speciality."[17] Dr. Gaeta is board certified in internal medicine and cardiology,[18] not neurology.[19] When asked if he had "any specific expertise with respect to Lewy body dementia," he testified that he was "aware of the diagnosis" of Lewy body dementia and that he knew "patients that have had it. But I'm not a neurologist."[20] Dr. Gaeta testified that he was not even "sure which" listing would apply to Lewy Body dementia.[21] He testified that "dementia would be the, you know, medical listing included. I think that's one of the psychological, psychiatric type listing[s]."[22] Neither of these two experts was qualified to opine about how long it takes Lewy body dementia to develop, which was a critical question that had to be answered to determine whether this impairment existed prior to plaintiff's date last insured. Their testimony was not substantial evidence to support the ALJ's finding that plaintiff did not have Lewy body dementia prior to her date last insured. Plaintiff's claim,

---

[16]Admin. Rec. at 34.

[17]Admin. Rec. at 36.

[18]Admin. Rec. at 38.

[19]According to the Mayo Clinic website, a neurologist is the type of specialist who would treat Lewy body dementia. Mayo Clinic "Lewy Body Dementia", available at https://www.mayoclinic.org/diseases-conditions/lewy-body-dementia/symptoms-causes/syc-20352025 (last visited February 19, 2021).

[20]Admin. Rec. at 40.

[21]Admin. Rec. at 39.

[22]Admin. Rec. at 39.

which was based, in part, on an allegation that she was disabled due to Lewy body dementia, was not groundless or frivolous.

As for plaintiff's depression, there was also not substantial evidence to support the ALJ's finding that plaintiff did not have this impairment prior to her date last insured. Plaintiff was hospitalized in 2018, prior to her date last insured, due to an intentional overdose, and it was noted at that time that she had a "[h]istory of depression with prior suicidal ideation[.]"[23] In one note from her hospitalization, Dr. Culverhouse stated that plaintiff "needs to f/u outpt with psych for her depression, attempted suicide and anxiety."[24] This is substantial evidence, for purposes of step two, that plaintiff had depression prior to her date last insured. Plaintiff's claim, which was based, in part, on an allegation that she was disabled due to depression was not groundless or frivolous.

The ALJ primarily relied on Dr. Valette's testimony[25] to determine that plaintiff did not have depression prior to her date last insured. But, plaintiff has presented evidence that Dr. Valette may not generally be qualified to testify as a medical expert. Dr. Valette's license in California was revoked in 2015 and she was terminated from the California Panel of

---

[23]Admin. Rec. at 499.

[24]Admin. Rec. at 638.

[25]Dr. Rose also opined that plaintiff had no mental medically determinable impairments, but the ALJ did not mention Dr. Rose's opinion in her decision, and the court can only "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ. . . ." Bray v. Comm'r Social Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009).

Consultative Examiners.[26] If Dr. Valette is not qualified to provide medical information to the agency as a consultative examiner, then her qualifications to serve as a medical expert at administrative hearings may be, as plaintiff suggests, "at best, suspect."[27]

Finally, plaintiff argues that the ALJ erred by having the two medical experts testify at the administrative hearing first, prior to any testimony from plaintiff.[28] Plaintiff argues that this violated agency policy as set forth in the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX"), an internal Social Security Administration policy manual. HALLEX I-2-6-70(b) provides:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.

Plaintiff argues that the agency requires an ALJ to comply with the policies set forth in the HALLEX. SSR 13-2p provides, in pertinent part, that "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." "SSRs are issued by the Commissioner

---

[26]Admin. Rec. at 316-318.

[27]Plaintiff's Brief Consistent with the Court's Briefing Order at 8, Docket No. 19.

[28]Plaintiff makes this argument as to her husband's testimony as well, but the primary pertinent testimony at issue here is plaintiff's testimony.

to clarify the Commissioner's regulations and policies." Kolvick v. Astrue, Case No. 10–1804–JCC, 2011 WL 4626014, at *9 (W.D. Wash. July 1, 2011). "Although they do not have the force of law, they are nevertheless given deference 'unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations.'" Id. (quoting Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)). Thus, plaintiff argues that the ALJ was required to follow HALLEX I-2-6-70(b) and that she failed to do so because she allowed the medical experts to testify before plaintiff. Plaintiff argues that her testimony was pertinent testimony relating to her symptoms and limitations.

Defendant argues that it was sufficient that the medical experts had access to the entire medical record, which in this case, according to defendant, contained no objective evidence to support the existence of depression or Lewy body dementia prior to plaintiff's date last insured of March 31, 2018. Defendant argues that in light of the medical record, plaintiff's testimony would not have been pertinent as it would have simply consisted of uncorroborated symptom testimony.

The problem with defendant's argument is plaintiff's symptom testimony was corroborated. As discussed above, Dr. Hrin noted that plaintiff's symptoms related to her Lewy body dementia had been ongoing "for at least two years. . . ."[29] In addition, plaintiff's testimony about her symptoms of depression was corroborated by medical evidence, namely her hospitalization after a suicide attempt.

---

[29]Admin. Rec. at 773.

-10-

The ALJ was required to comply with HALLEX I-2-6-70(b) by either allowing the medical experts to hear plaintiff's testimony prior to their testifying or by providing a summary of plaintiff's testimony to the medical experts. Her failure to do either in this case was error.

Because the ALJ erred, the court must decide whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate

-11-

remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Given that the ALJ erred at step two, a remand for further proceedings is necessary here so that the ALJ can proceed with the next steps of the sequential analysis.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 19th day of February, 2021.

/s/ H. Russel Holland
United States District Judge
